**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| GARY MOGEL, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:20-cv-04464-JMG |
| | : | |
| CITY OF READING, | : | |
| Defendant. | : | |

---

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                  **October 27, 2021**

I.       **OVERVIEW**

While working as a First Deputy Fire Chief for the City of Reading, Plaintiff Gary Mogel wore a variety of hats. As a high-ranking firefighter, he sometimes wore the hat of a manager, reviewing department policies, writing reports, and supervising his subordinates. But he also wore the hat of a firefighter at times, and always kept it at the ready, because he maintained a duty to respond to serious fires and emergencies.

Throughout Plaintiff's tenure as First Deputy, Defendant paid him on a salary basis without compensation for overtime on the theory that he was primarily a white-collar employee. Shortly after Plaintiff retired, however, he sued Defendant under the Fair Labor Standards Act ("FLSA") claiming the most important hat he had worn for Defendant was the one he wore into the frontlines of active fires. After the close of discovery, Plaintiff and Defendant both moved for summary judgment. For the reasons that follow, the Court grants Defendant's and Plaintiff's motions only in part.

## II.    FACTUAL BACKGROUND

### a.    Allegations

Plaintiff worked for Defendant's fire department from 1988 to July 2020. Pl.'s Statement of Undisputed Facts, Pl.'s Mot. Part. Summ. J. ("PSOF for PMSJ") ¶¶ 5–7; Def.'s Statement of Disputed Facts, Pl.'s Mot. Part. Summ. J. ("DSOF for PMSJ") ¶¶ 5–7. During that time, Plaintiff rose through the fire department's ranks, beginning his career as a line firefighter and ending it as a First Deputy Fire Chief. PSOF for PMSJ ¶¶ 5–7; DSOF for PMSJ ¶¶ 5–7. This case emerges from the time Plaintiff spent working as a First Deputy between 2014 and July 2020. PSOF for PMSJ ¶¶ 5–7; DSOF for PMSJ ¶¶ 5–7.

As First Deputy, Plaintiff commanded one of Defendant's four fire response platoons. PSOF for PMSJ ¶¶ 8, 11; DSOF for PMSJ ¶¶ 8, 11. Plaintiff worked the same shifts as his platoon—two 10-hour day shifts and two 14-hour night shifts followed by four days off. PSOF for PMSJ ¶¶ 10, 12; DSOF for PMSJ ¶¶ 10, 12. Plaintiff's duties included not only supervising his platoon, preparing administrative reports, and maintaining equipment and discipline, but also responding to fires and emergencies. Def.'s Statement of Undisputed Facts, Def.'s Mot. Summ. J. ("DSOF for DMSJ") ¶¶ 13, 25, 30, 31, 32, 33, 34, 46, 49, 51–52.[1]

The parties disagree about how much time Plaintiff spent performing each of these duties and about how much discretion Plaintiff had in performing them. DSOF for DMSJ ¶ 69; PSOF for DMSJ ¶ 69. The parties also disagree about what Plaintiff's fire response duties looked like in practice. Defendant alleges that Plaintiff generally acted as a commander and manager at the scene of a fire and generally remained out of harm's way. DSOF for DMSJ ¶¶ 27, 42, 44–45. But

---

[1] Plaintiff does not deny these allegations in its own Statement of Disputed Facts, so Plaintiff admits them. *See* ECF No. 7 ¶ 8(c) ("All material facts set forth in the Statement of Undisputed Facts . . . shall be admitted unless specifically controverted by the opposing party.")

Plaintiff alleges his duties often brought him to the frontline of fighting fires. Pl.'s Statement of Disputed Facts, Def.'s Mot. Summ. J. ("PSOF for DMSJ") ¶ 27; PSOF for PMSJ ¶¶ 27–30.

Prior to 1996, Defendant paid First Deputies on an hourly basis and compensated them for overtime at time-and-a-half. PSOF for PMSJ ¶ 35; DSOF for PMSJ ¶ 35. After 1996, however, Defendant began paying First Deputies on a salary basis, rendering them ineligible for overtime compensation. PSOF for PMSJ ¶ 36; DSOF for PMSJ ¶ 36. Despite the change in compensation, First Deputies' job duties did not change, and they remained the same when Plaintiff retired as they were before 1996. PSOF for PMSJ ¶ 39; DSOF for PMSJ ¶ 39. Plaintiff did not receive any overtime compensation during his time working as a First Deputy. PSOF for PMSJ ¶ 40; DSOF for PMSJ ¶ 40.

### b.    Procedural History

Plaintiff filed a Complaint before this Court on September 11, 2020, alleging that Defendant had violated the FLSA's overtime and record keeping requirements. *See* ECF No. 1. Defendant filed an Answer denying liability and asserting a variety of affirmative defenses. *See* ECF No. 4.

After the close of discovery, both parties moved for summary judgment. *See* ECF Nos. 21, 22. Defendant moved for total summary judgement. *See* ECF No. 21. Plaintiff moved for summary judgment on all issues except on the issue of determining the number of hours Plaintiff had worked overtime without compensation. *See* ECF No. 22. Both parties have filed their responses, *see* ECF Nos. 24 & 25, and both motions for summary judgment are now before this Court.

### III.   LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). And a fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

IV.     **ANALYSIS**

Plaintiff asks this Court to enter summary judgment on five issues: (1) that Defendant is covered by the FLSA; (2) that Defendant is liable for violations of the FLSA's recordkeeping requirement; (3) that Defendant's payments to Plaintiff violated the FLSA's overtime requirement; (4) that Defendant's violations of the FLSA's overtime requirement were willful and, therefore, extend the statute of limitations; and (5) that Defendant is liable for liquidated damages. *See* Pl.'s Mot. Part. Summ. J. at 2, ECF No. 22.

Defendant asks this Court to enter summary judgment against Plaintiff for all his claims on the basis that Plaintiff was exempt from the FLSA's overtime requirement. *See* Def.'s Mot. Summ. J., ECF No. 21.

The first two issues in Plaintiff's motion are easily resolved. Defendant is a city of the third-class chartered under the laws of Pennsylvania. PSOF for PMSJ ¶ 1; DSOF for PMSJ ¶ 1. As such, it is a "public agency" under the FLSA, which means it is a covered employer under the FLSA. 29 U.S.C. § 203(d), (s)(1)(C). Accordingly, Plaintiff is entitled to summary judgment in his favor on the first issue. As for the second issue—the FLSA does not provide a private right of action to enforce its recordkeeping requirement, so Plaintiff cannot hold Defendant liable on that basis. *See Lopez v. Tri-State Drywall, Inc.*, 861 F. Supp. 2d 533, 536 (E.D. Pa. 2012).

The remaining issues, however, require further discussion. The Court will address each issue in turn.

> a.  **The FLSA's Overtime Requirement**

The FLSA requires employers to pay their employees time-and-a-half for the hours they spend working overtime. 29 U.S.C. § 207(a)(1). But certain employees are exempt from the overtime requirement based on their compensation scheme and job duties. 29 U.S.C. § 213(a).

Under these exemptions, employees who are paid more than $684 per week on a salary basis and whose job duties are either "executive" or "administrative" in nature are not entitled to overtime compensation. 29 U.S.C. § 213(a); 29 C.F.R. §§ 541.100, 541.200. An employee's duties are executive if they require "management of the enterprise," the "direction of other employees," and "hiring, firing and promoting other employees." 29 C.F.R. § 541.100. An employee's duties are "administrative" if they require "non-manual work directly related to the management or general business operations of the employer or the employer's customers" and require "the exercise of discretion and independent judgment on matters of significance." 29 C.F.R. § 541.200.

Of course, many employees perform a variety of duties, some of which would qualify as executive or administrative, some of which would not. The FLSA deals with this practical complexity by categorizing employees as exempt or non-exempt based on their "primary duty." 29 C.F.R. § 541.700(a). An employee's "primary duty" is the "principal, main, major or most important duty that the employee performs." *Id.* The test is qualitative, requiring consideration of not only "the amount of time" an employee spends performing a given duty but also "the relative importance" of that duty and the employee's "relative freedom from direct supervision" in performing that duty. *Id.* The employer bears the burden of proving that an employee's primary duty renders the employee exempt from overtime. *Clews v. Cty. of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974)).

The FLSA expressly includes firefighters as employees within its scope. 29 U.S.C. § 207(k). And, like other employees, firefighters are exempt from the overtime requirement when their "primary duty" is "executive" or "administrative." *Cf.* 29 C.F.R. § 541.3(b)(2)&(3) (providing that firefighters engaged in frontline firefighting are *not* exempt because their

6

"primary duty" is not executive or administrative); *see also Mullins v. City of New York*, 653 F.3d 104, 115–16 (2d Cir. 2011).[2] In evaluating a firefighter's primary duty, however, a firefighter's duty to manage or direct fire response on the frontlines should be treated as a frontline response duty rather than as an executive or administrative duty. 29 C.F.R. § 541.3(b); *Maestas*, 664 F.3d at 828 ("[F]irst responders are not exempt executives even if they also direct the work of other employees in the conduct of an investigation or fire").[3]

Defendant moves for an entry of judgment that Plaintiff is an exempt executive or administrative employee. To be sure, Defendant has identified evidence that could support such a finding. For example, Defendant's Fire Chief declared under penalty of perjury that First Deputies spend "less than 1% of their total time" engaged in "frontline firefighting" and that their "most important function" is the "supervision and management of the platoon." Joint Appendix ("JA") 377, ECF No. 21-3. This supervision and management allegedly included

---

[2] Plaintiff seems to take the position that 29 C.F.R. § 541.3(b) renders the executive and administrative exemptions wholly inapplicable to firefighters who participate in any way in frontline firefighting. Pl.'s Br. Supp. Pl.'s Mot. Summ. J. at 6. But that would be an overbroad reading of the regulation. The Third Circuit has not had an opportunity to interpret this regulation. But each circuit that has interpreted the regulation—the Second, Fourth and Tenth—has held that it does not displace the primary duty test. *See Mullins v. City of New York*, 653 F.3d 104, 115–16 (2d Cir. 2011); *Morrison v. County of Fairfax*, 826 F.3d 758, 767 (4th Cir. 2016); *Maestas v. Day & Zimmerman*, 664 F.3d 822, 828–29 (10th Cir. 2012); *see also Escribano v. Travis County*, 947 F.3d 265, 268 n.4 (5th Cir. 2020) (interpreting the regulation to preserve the primary duty test in dicta). Lower courts in this Circuit have adopted the same interpretation. *See Carey v. Nat'l Event Servs.*, 2015 WL 667519, at *5 (E.D. Pa. Feb. 13, 2015); *Hudson v. Absecon Emergency Servs.*, 2016 WL 5329593, at *10 (D.N.J. Sept. 22, 2016).

[3] Defendant relies heavily on *Emmons v. City of Chesapeake*, 982 F.3d 245 (4th Cir. 2020), which found that some high-level management of a fire response conducted at a safe distance from the frontline constituted an executive duty. But the Court need not address *Emmons* at this stage because there remains a factual dispute as to whether and to what degree Plaintiff's fire response duties brought him to the frontlines. Only after a jury settles that dispute can the Court determine *Emmons*'s relevance to this case.

providing feedback to subordinates, making recommendations on personnel decisions, inspecting equipment and filing reports. JA 180–81, 325–26, 233–34.

But Plaintiff moves for an entry of summary judgment that he is *not* an exempt employee, and he too has produced evidence that could persuade a jury to find in his favor. While Plaintiff concedes that he had some administrative duties, such as reviewing and writing department policies, he also testified that he did not perform those duties during his night shifts, which accounted for more than half of his scheduled hours. JA 217:1–218:15. Further, the First Deputy job description includes "respond[ing] to alarms of fire and other emergencies" among the First Deputies duties, and Plaintiff testified that he "commonly" had to enter burning buildings when responding to fires. JA 107, 233. And, because Defendant's fire department had "limited" personnel on hand, Plaintiff allegedly often had to support his platoon by doing the work of a line firefighter. JA 107–08 ("[It was n]ot uncommon that I had a hose line in my hand or a pipe tall pole in the ceiling"). The Fire Chief also testified that First Deputies keep personal protective equipment—including a self-contained breathing apparatus that is necessary for entering burning buildings—in their cars so that they can be ready to respond to fires at all times. JA 281–84.

In sum, each party has produced evidence that could persuade a jury to resolve the exemption issue in its favor. Since there remains a genuine dispute as to what Plaintiff's primary duty was, it would be inappropriate to enter summary judgment for either party on this issue.

### b.  The Statute of Limitations

The FLSA has a two-year statute of limitations. 29 U.S.C. § 255(a). This means an employee can recover the difference between what he was paid and what he was owed under the FLSA on every paycheck he received in the two years before he filed his complaint. *Id.*; *Stone v. Troy Constr.*, 935 F.3d 141, 154 (3d Cir. 2019). When an employee can show that his employer

8

"willful[y]" violated the FLSA, however, this statute of limitations extends to three years. 29 U.S.C. § 255(a).

To act willfully, an employer must have had some notice that its compensation scheme could violate the FLSA. *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 126–27 (3d Cir. 2017) ("Willful FLSA violations require a more specific awareness of the legal issue."). It is the employee's burden to prove that an employer's violation of the FLSA was willful. *Jackson v. Art of Life, Inc.*, 836 F. Supp. 2d 226, 237 (E.D. Pa. 2011).

The Court cannot enter summary judgment in favor of Plaintiff on the issue of willfulness because Plaintiff has not produced any evidence that Defendant was *specifically aware* that its compensation scheme for First Deputies could violate the FLSA. Plaintiff asks the Court to infer that Defendant willfully violated the FLSA from the fact that Defendant stopped paying First Deputies overtime in 1996 without any documented explanation. Pl.'s Br. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Br.") at 9. But this bare fact, even construed in the light most favorable to Plaintiff, says nothing about whether Defendant was on notice that its new compensation scheme raised concerns under the FLSA.

Plaintiff cites *Martin v. Selker Bros.*, 949 F.2d 1286 (3d Cir. 1991) and *Albanese v. Bergen County*, 991 F.Supp. 410 (D.N.J. 1997) for support, but these cases are unavailing. In *Martin*, there was evidence that the defendant had known his compensation scheme could violate the FLSA and had even discussed the issue with an attorney. 949 F.2d at 1296. Similarly, in *Albanese*, there was evidence that the defendants were specifically aware of a few court decisions in which compensation schemes similar to their own had been found to violate the FLSA. *Albanese*, 991 F.Supp at 415, 425 ("[A]fter defendants learned about the [court decisions], they had a duty to conduct a more extensive inquiry."). Unlike the plaintiffs in *Martin*

and *Albanese*, Plaintiffs here have not produced any evidence that Defendant knew anything about the legality or illegality of denying First Deputies overtime. There is no evidence that Defendant consulted a lawyer, was informed of applicable precedent, or even received a complaint about the new compensation scheme from an employee.

Because Plaintiff bears the burden of proof on the issue of willfulness, this absence of evidence precludes summary judgment in his favor.

Defendant, however, did not move for summary judgment on the issue of willfulness. *See* Def.'s Mot. Summ. J. (moving for summary judgment "on all claims on the grounds more fully described in the supporting memorandum of law"); Def.'s Mem. Law Supp. Mot. (not discussing willfulness or the statute of limitations). Accordingly, the Court does not enter summary judgment in favor of Defendant on this issue either.

### c. Liquidated Damages

Employees who can show they have been deprived of overtime under the FLSA are usually also entitled to liquidated damages equal to their unpaid overtime compensation. 29 U.S.C. § 216(b). But if an employer "shows to the satisfaction of the court" that it acted in "good faith" and had a "reasonable basis" for maintaining a compensation scheme that violated the FLSA, then the court can deny or reduce liquidated damages. 29 U.S.C. § 260.

Whereas the reasonableness of an employer's conduct is measured against an objective standard, the good faith requirement requires a subjective inquiry into whether the employer had an "honest intention to ascertain and follow" the FLSA's requirements. *Williams v. Tri-County Growers*, 747 F.2d 121, 129 (3d Cir. 1984). To establish good faith, an employer need not necessarily consult with a lawyer. *Crago v. Rockwell Mfg.*, 301 F.Supp. 743, 748 (W.D. Pa. 1969) (denying liquidated damages despite the employer's failure to "secur[e] from its legal

10

department a reliable opinion"). But the employer must at least demonstrate that it made *some* effort to ascertain the Act's requirements. *Williams v. Tri-County Growers*, 747 F.2d 121, 129 (3d Cir. 1984) (holding that an employee was entitled to liquidated damages where the record was "silent to any efforts" made by the employer "to ascertain and follow the dicates of the FLSA").

For much the same reasons there is no evidence that Defendant willfully violated the FLSA, there is no evidence that it acted in subjective good faith. There is no evidence that Defendant discussed the legality of its compensation scheme with a lawyer or anyone else before Plaintiff commenced this litigation. Nor is there any evidence that Defendant conducted its own legal analysis. Because Defendant bears the burden of proving that it acted in good faith, Defendant's failure to produce evidence on this issue requires this Court to enter summary judgment in Plaintiff's favor.

Defendant argues that caselaw from other circuit courts, the Department of Labor's regulations, and a Department of Labor opinion letter comport with Defendant's compensation scheme, and Defendant asks the Court to infer from the mere existence of these authorities that Defendant relied on them in good faith. Def.'s Mem. Law Opp. Pl.'s Mot. Summ. J. at 18. But Defendant has not produced any evidence that it actually reviewed or was aware of these authorities when it decided to stop paying First Deputies overtime or at any point thereafter. While these authorities might support a conclusion that Defendant had a reasonable basis to change compensation schemes, they cannot support a finding of good faith unless Defendant can show that Defendant actually consulted them.

It is yet to be determined whether Defendant's compensation scheme violated the FLSA. But if a jury finds that it did, then Plaintiff will be entitled to liquidated damages.

V.      **CONCLUSION**

Plaintiff has sustained his burden to show that there is no genuine dispute of fact regarding whether Defendant is a covered employer under the FLSA, so the Court enters summary judgment in favor of Plaintiff on that issue. But there is no private right of action to enforce the FLSA's recordkeeping requirement, so the Court enters summary judgment against Plaintiff on that claim.

There remains a genuine dispute as to whether Plaintiff was exempt from the FLSA's overtime requirement, so the Court cannot enter summary judgment for either party on that issue. Further, the Court cannot enter summary judgment that the statute of limitations should extend to three years because there is no evidence that, if Defendant did violate the FLSA, it did so willfully. By that same token, Defendant has not come forward with any evidence that it acted in good faith to ascertain the FLSA's requirements before denying Plaintiff overtime compensation, so the Court enters summary judgment in favor of Plaintiff on the issue of liquidated damages.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

12